### W. A. NORRIS v. S. C. & N. M. ENNIS.

(Case No. 3599.)

1. OUTSTANDING TITLE — PURCHASER — FRAUD. — The rule that a purchaser of land, in possession thereof under a deed with covenant of warranty, cannot resist the payment of a purchase money note without showing that the title has failed in whole or in part, and an eviction, or that he is liable to eviction, by a superior outstanding title of which he had no notice when he purchased, is subject to the following exception, viz.: If the acceptance of

the deed was induced by the fraud of the vendor, the vendee is not com-
pelled to await an actual eviction, as where the purchase was induced by the
representation that a deed conveying a superior outstanding title was a
forgery, and the vendor falsely represented himself as solvent and able to
respond on his warranty. In such a case the vendee may offset the note
with the amount necessarily paid to purchase the superior outstanding title.

ERROR from Johnson. Tried below before the Hon. D. M. Pren-
dergast.

On January 14, 1873, Ennis and wife brought suit against Norris
on a note for $180, and sought a foreclosure of a vendor's lien upon
the land described. By supplemental petition they set up another
note and claimed that it was also given for the land, and pray fore-
closure of the lien secured by that note.

Norris defended upon the ground that at the time he purchased
the land the defendants in error informed him that there was a deed
on record to one Bowden for the land, but that it was a forgery;
that he relied upon that representation and was thereby induced to
make the purchase; that in fact the deed to Bowden was valid and
vested in him the title to the land. He also averred that they rep-
resented to him that their warranty was good and would protect
him, and that he relied, and was induced to act, upon that repre-
sentation, when in fact they were then and continued insolvent.
He also averred that the vendee of Bowden had brought suit in the
federal court for the land against a number of parties upon it and
had recovered the same; that his eviction was threatened by the
owner of the Bowden title, and to save his improvements and to
secure the land he was compelled to purchase that title, and paid
therefor $150, which amount, with interest, he asked might be set
off against the notes.

To these answers the defendants in error excepted specially. The
court sustained the exceptions, and upon a trial rendered judgment
against the plaintiff in error for the sum of $345.47, and decreed a
foreclosure of the lien. There was no statement of facts in the
record.

*Brown & Hall*, for plaintiff in error.

*T. D. Bledsoe*, for defendant in error.

WATTS, J. COM. APP.— As a general rule, where a purchaser takes
land with notice of defects in the title, and accepts a deed with gen-
eral warranty, he cannot resist the payment of the purchase money
on the ground that there is a superior title in another to that ac-

quired by him, and that he is in danger of eviction from that source. Brock *v.* Southwick, 10 Tex., 65; Cooper *v.* Singleton, 19 Tex., 265; Price *v.* Blount, 41 Tex., 475.

In the last case the doctrine is thus stated by Justice Reeves: "Where the purchaser holds under an executed contract, as a deed with warranty, he cannot resist the payment of the purchase money on proof that the title may be doubtful. He must do more. He must show, with reasonable certainty, that the title has failed in whole or in part, and that he has been evicted, or, if not, that he is liable to be evicted by a superior outstanding title of which he had no notice at the time of his purchase."

This rule has its foundation in reason and justice, for that is the contract between the parties. The purchaser takes the land with the chances of eviction, relying in the event of such eviction upon the warranty. In other words the purchaser enters into the contract with his eyes open, and equity will not relieve him from the consequences of his deliberate acts. For, as well said by Justice Smith in the case of Demaret *v.* Bennett, 29 Tex., 267: "But when the purchaser goes into possession under a deed of warranty, and with notice of defects in the title, there are no equitable grounds upon which he can withhold the purchase money for failure of title, for the transaction still remains as the vendee understood it to be at the date of the purchase, and he will be forced to await eviction, and then rely upon the covenants in his warranty for damages arising from the breach of the same."

This general rule is subject to well-established exceptions; for instance, where the purchaser has been induced by the fraud of the vendor to accept such a deed, then the purchaser would not be compelled to await an actual eviction and then rely upon the warranty. In such case the fraud of the vendor entitles the purchaser to relief in a court of equity. In truth the contract, in such case, is not what it appears to be from the face of the deed. The purchaser is induced to accept the deed through the misrepresentations of the vendor as to certain material facts forming the inducement, in whole or in part, for the purchaser's entering into the contract. Under such circumstances the purchaser would not have to await actual eviction, and rely upon the breach of warranty for his damages. But where, manifestly, there is a superior outstanding title, accompanied with threatened assertion of the same, this is in law tantamount to an eviction; and in cases of fraud the purchaser may secure in equity a rescission of the contract, or else purchase his peace, and offset the amount thus necessarily expended against the

purchase money still owing by him. And especially is this true when it is shown that the vendor is insolvent and his warranty worthless.

In this case it is stated in the answer that, at and before the purchase, the defendants in error did inform the plaintiff in error of the existence of the deed to Bowden, but it is also charged that they assured him that it was a forgery and entirely worthless, and that he relied upon that assurrance and was thereby induced to make the purchase. This, if the averments of the answer are true, and they must be so accepted in testing the same by exceptions, was a misrepresentation as to a material fact; for if, as a matter of fact, this pretended deed to Bowden was a forgery, it resulted, as a legal consequence, that no title could be successfully asserted under it. And it will be borne in mind that an examination of the record of such deed would ordinarily furnish but little information as to whether or not the deed was a forgery. Generally that question must be determined by a resort to extraneous facts. And if the plaintiff in error relied upon the representations of the defendants in error, to the effect that the Bowden deed was a forgery, when in fact it was a valid deed, constituting a superior title to that secured by him, it cannot be held that he took the risk of actual eviction relying upon the warranty for his damages. It is also charged in the answer that the defendants in error were at the date of the purchase, and still are, insolvent, a fact that they concealed from him, and about which they misled him by misrepresentations.

We are of the opinion that the answer asserted a good defense to the action; that is, to the extent of the amount necessarily expended by plaintiff in error in purchasing and securing the superior outstanding title. Of course the burden is upon him to establish these averments, and to clearly show that there was a superior outstanding title, from which he was in danger of eviction, and to obviate which he made the expenditure.

If neither of the parties to this suit were parties to that in the federal court, then their respective rights would not be affected by any judgment rendered therein. And the answer fails to aver that either plaintiff in error or defendants in error were parties to that suit. Hence the exceptions to that portion of the answer asserting that suit and judgment were properly sustained. But sustaining the exceptions to the other portion of the answer was error for which the judgment ought to be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted June 26, 1883.]